Of Counsel:
GALIHER DeROBERTIS NAKAMURA
    ONO TAKITANI
Law Corporations

| | |
|---|---|
| GARY O. GALIHER | 2008 |
| L. RICHARD DeROBERTIS | 3179 |
| DEREK S. NAKAMURA | 4273 |
| JEFFREY T. ONO | 2763 |
| ANTHONY P. TAKITANI | 4422 |
| DIANE T. ONO | 5590 |

610 Ward Avenue, Suite 200
Honolulu, Hawaii  96814-3308
Telephone:  (808) 597-1400

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 07 2003

at ___ o'clock and ___ min. ___ M
WALTER A.Y.H. CHINN, CLERK

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | | |
|---|---|---|
| IN RE: | ) | CIVIL NO. CV 03-00326 REJ KSC |
| HAWAII STATE ASBESTOS | ) | |
| CASES | ) | **FIRST AMENDED COMPLAINT;** |
| | ) | **SUMMONS** |
| GEORGE H. TORO and VIVIAN | ) | |
| TORO; | ) | |
| | ) | |
| ZEKE H. SAKURAI and MASAE | ) | |
| SAKURAI; | ) | |
| | ) | |
| LOLITA F. APO, individually and as | ) | |
| Special Administrator of the Estate of | ) | |
| JOHN K. APO, deceased; | ) | |
| | ) | |
| VIOLET MAII, individually and as | ) | |
| Special Administrator of the Estate of | ) | |
| SAMUEL K. MAII, deceased; | ) | |

ATTEST: A True Copy
SUE BEITIA
Clerk, United States District
Court, District of Hawaii
By _____
                              Deputy

|                                                                                                                  |     |
| ---------------------------------------------------------------------------------------------------------------- | --- |
| Plaintiffs,                                                                                                       | )   |
|                                                                                                                  | )   |
| vs.                                                                                                              | )   |
|                                                                                                                  | )   |
| 1) COMBUSTION ENGINEERING, INC., a Delaware corporation;                                                         | )   |
|                                                                                                                  | )   |
| 2) ABB, LTD., a foreign corporation, as Successor-in-Interest to COMBUSTION ENGINEERING, INC., a Delaware corporation; | )   |
|                                                                                                                  | )   |
| 3) ASEA BROWN BOVERI, LTD., a foreign corporation, as Successor-in-Interest to COMBUSTION ENGINEERING, INC., a Delaware corporation; | )   |
|                                                                                                                  | )   |
| 4) ASEA BROWN BOVERI, INC., a Delaware corporation, as Successor-in-Interest to COMBUSTION ENGINEERING, INC., a Delaware corporation; | )   |
|                                                                                                                  | )   |
| 5) TRAVELERS INSURANCE COMPANY, a Connecticut corporation;                                                       | )   |
|                                                                                                                  | )   |
| 6) TRAVELERS INDEMNITY COMPANY, a Connecticut corporation;                                                       | )   |
|                                                                                                                  | )   |
| 7) ARTER & HADDEN, LLP;                                                                                           | )   |
|                                                                                                                  | )   |
| 8) ROBERT B. PRESTON, an individual;                                                                             | )   |
|                                                                                                                  | )   |
| 9) FRANK CHRISTENSON, an individual;                                                                             | )   |

2

10) CONNECTICUT VALLEY )
CLAIMS SERVICES COMPANY, )
INC. a Delaware corporation; )
)
11) JOHN P. BRETT, an individual; )
)
12) CHAR HAMILTON )
CAMPBELL & THOM, Attorneys At )
Law, A Law Corporation; )
)
Defendants. )
)

D:\00862A70\pleading\jts009fac.doc

## FIRST AMENDED COMPLAINT

PARTIES:

1.    This class action is being brought on behalf of persons (or their estates) whose Hawaii asbestos personal injury and wrongful death claims against Combustion Engineering, Inc. (CE) were settled for diminished value by a conspiracy to provide fraudulent discovery answers in the Hawaii asbestos litigation.

2.    Defendants and each of them entered into a conspiracy to fraudulently deny that CE sold, supplied, delivered, ordered asbestos products to the State of Hawaii, Pearl Harbor Naval Shipyard either as separate sales, in conjunction with sales of boilers or as component parts of boilers.

3.     Plaintiff GEORGE H. TORO is a resident of the City and County of Honolulu, State of Hawaii, Plaintiff VIVIAN TORO is a resident of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.

4.     Plaintiff ZEKE H. SAKURAI is a resident of the City and County of Honolulu, State of Hawaii, Plaintiff MASAE SAKURAI is a resident of the City and County of Honolulu, State of Hawaii, who were injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.

5.     Plaintiff LOLITA F. APO, Special Administrator of the Estate of JOHN K. APO is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.

6.     Plaintiff VIOLET MAII, Special Administrator of the Estate of SAMUEL K. MAII is a resident of the City and County of Honolulu, State of Hawaii, who was injured by the wrongful and tortious conduct of Defendants as explained later in this complaint.

7.     Defendant 1) COMBUSTION ENGINEERING, INC., a Delaware corporation; Defendant 2) ABB, LTD., a foreign corporation, as Successor-in-Interest to COMBUSTION ENGINEERING, INC., a Delaware corporation; Defendant 3) ASEA BROWN BOVERI, LTD., a foreign corporation, as

4

Successor-in-Interest to COMBUSTION ENGINEERING, INC., a Delaware corporation; Defendant 4) ASEA BROWN BOVERI, INC., a Delaware corporation; Defendant 5) TRAVELERS INSURANCE COMPANY, a Connecticut corporation; Defendant 6) TRAVELERS INDEMNITY COMPANY, a Connecticut corporation; Defendant 7) ARTER & HADDEN, LLP; Defendant 8) ROBERT B. PRESTON, an individual; Defendant 9) FRANK CHRISTENSON, an individual; 10) CONNECTICUT VALLEY CLAIMS SERVICES COMPANY, INC., a Delaware corporation; Defendant 11) JOHN P. BRETT, an individual and resident of the State of Connecticut; and Defendant 12) CHAR HAMILTON CAMPBELL & THOM, Attorneys At Law, A Law Corporation, is incorporated in the State of Hawaii; were doing business in the State of Hawaii at all times mentioned herein, or had significant contacts with Hawaii upon which the allegations in this Complaint are based.

    8.    Pursuant to Rule 23 of the Hawaii Rules of Civil Procedure, Plaintiffs bring this action on their own behalf and on behalf of a class consisting of:

> All persons who with Hawaii asbestos personal injury or wrongful death claims (a) who were represented by Gary O. Galiher and (b) who settled their claims with Combustion Engineering, Inc. before 2001.

9.    The named representative Plaintiffs are members of the class they seek to represent.

10.    The persons constituting the class are so numerous as to make it impractical to bring them all before the Court.

11.    There are substantial questions of law and fact common to the class. These common questions include, but are not limited to, the following:

a.    They entered into nuisance value settlements with Combustion Engineering in the Hawaii Asbestos litigation.

b.    These settlements were negotiated on their behalf by their attorney, Gary O. Galiher.

c.    They were fraudulently induced to enter these settlements upon representations by CE's discovery answers in Hawaii that CE did not sell any asbestos to any Hawaii entities, including Pearl Harbor Naval Shipyard, and CE's asbestos products were not on the U.S. Navy's Qualified Products List, and CE did not have any records available to it to evidence any asbestos products being sold or distributed by CE to Hawaii.

d.    They would have achieved higher settlements but for the ongoing conspiracy to provide fraudulent discovery answers in the Hawaii Asbestos litigation.

6

12. The claims of the named Plaintiffs are typical of the claims of the class. The same events which give rise to the claims are legal theories of the named Plaintiffs, also give rise to those of the class.

13. The representative Plaintiffs, with the assistance of their counsel, will fairly and adequately protect the interests of the class.

14. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

15. A class is superior to other available methods for the fair and efficient adjudication of this controversy.

FACTUAL PREDICATE

16. On July 16, 1979, a comprehensive set of interrogatories in the *Nobriga* case was filed in the Circuit Court of the First Circuit, State of Hawaii. These were answered and signed under penalty of perjury on behalf of Defendant Combustion Engineering, Inc. ("CE") by Frank T. Christenson, and were drafted by Robert B. Preston, an attorney and partner in Arter & Hadden, working in conjunction with Travelers.

17. In these 1979 *Nobriga* interrogatory answers, CE acting through and with Frank T. Christenson, Arter & Hadden, and Travelers first began (in Hawaii) its policy of restricting all answers to the Refractory & Insulation Co. ("R&I") time frame of 1963 to 1972, when its wholly owned subsidiary and later division, R&I,

7

allegedly manufactured asbestos insulation products. This policy deceptively hid the fact that CE's boilers included asbestos-containing components and thus, CE had been selling asbestos both before 1963 and after 1972, and these sales were outside of its R&I subsidiary and included its marine boilers and land-based boilers. *For example*, Interrogatory No. 8 was answered:

> 8.   Have you at any time since 1930 sold, delivered or supplied any "asbestos products" to Pearl Harbor or any other military or civilian shipyard?
>
> Ans.:   To the best of this defendant's knowledge, it supplied no asbestos-containing insulation products to Pearl Harbor. This defendant's asbestos-containing insulation products were not on the U.S. Navy's Qualified Products List. To the best of this defendant's knowledge it supplied no asbestos-containing products to any other shipyard in Hawaii.

Based on this false answer, CE as a part of the conspiracy to defraud did not respond to the next eight questions (nos. 9 to 15) nor 30 to 38, nor 42 to 50.

28.   CE answered interrogatory nos. 16 and 17 as follows:

> 16.   Have you at any time since 1930 bought from, sold to, delivered or supplied any "asbestos product" to any defendant?
>
> Ans.: Yes.
>
> 17.   . . . .
>
> Ans.: This defendant ceased the manufacture and sale of asbestos-containing products in 1972. Because of that fact and because of the fact that our records retention policy is such that records are not kept for any substantial

> period of time, we are unable to answer this interrogatory
> with any specificity. However to the best of our
> information and knowledge asbestos-containing
> insulation products were purchased from Johns-Manville,
> Owens-Corning, and UNARCO. However, such
> purchases did not occur within the State of Hawaii.

29.     These answers are deceptive for several reasons.  In 2001 Plaintiffs first discovered three so called "Hornik" memos.  These "Hornik" memos were on ABB letterhead and were dated in the 1990's.  They were drafted by John Hornik to CVCSC personnel and to Arter & Hadden.  These memos summarized the sales records for what was sold to various projects in Hawaii, thus proving that CE kept records, including purchase orders, from the 1960's to at least 1993.  Second, the three 1993 Hornik memos prove that sales by CE of Johns-Manville asbestos products occurred in the State of Hawaii.  Third, this reveals the deception of CE's answer to interrogatory no. 8 where it states its asbestos products were not on the U.S. Navy Qualified Products List ("QPL").

30.     Moreover, this answer is absolutely false.  CE's marine boiler division sold 100% of its boilers in 1979-80 (the very years of these answers) to the U.S. Navy (*See* deposition of Carl Horlitz taken February 2, 1995 at pp. 179:25-180:5) and sold, used, or supplied asbestos containing gaskets up until 1990.  (*Id.* at pp. 82:10-16 & 86:1-16.)

31.     On January 7, 1985, Defendant CHAR HAMILTON CAMPBELL & THOM (recklessly indifferent to the fact that these answers were false and CE did

sell asbestos to Hawaii entities) forwarded CE's Responses to Plaintiffs' Amended Master Set of Interrogatories in both Hawaii state and federal court litigation (*i.e.,* identical answers verified by Frank T. Christenson two times--one for each court.) These were signed under oath by Frank T. Christenson.

32.    These 1985 master interrogatory answers continue the same deceptive discovery schemes of CE to deny sales of asbestos-containing products to Hawaii and thwart discovery into its actual knowledge of the dangers of asbestos dust. CE's answers are as follows:

> 8.    Have you at any time from 1959 through 1983 sold, delivered or supplied any "asbestos products" to any entity in Hawaii and/or Pearl Harbor?
>
> Ans.: Defendant has no records of direct sales of its asbestos products to entities in Hawaii and, upon reasonable inquiry, can find no personnel with recollections of such sales. With respect to sales to Pearl Harbor, this defendant believes there were no such sales since this defendant's asbestos-containing insulation products were not on United States Navy's Qualified Products List and therefore were neither sold to nor purchased by the United States Navy.
>
> 8a.    Have you any time from 1930 through 1959 sold, delivered or supplied any "asbestos products" to any entity in Hawaii and/or Pearl Harbor?
>
> Ans.: No.
>
> 8b.    Do you have any knowledge of any of your asbestos products ever being used in Hawaii and/or Pearl Harbor between 1930 and 1983, and if so, set forth the

10

facts upon which you base your answer including the
years and place of use.

Ans.: No.

(CE's *Nobriga* Interrogatory Answers at pp. 5 and 5a.)  This is false given the

documents CE produced in 2001 in *Yoji Ono*.  Specifically, CE supplied:  (1)

asbestos gaskets, R&I no. 12 medium temperature insulating block, insulating

cement, blanket insulation, plastic "stic-tite" insulation, insulation firebrick, high

temperature R&I no. 3000 cement to Barber's Point in 1960.

  33. In fact, CE affirmatively used its 1985 master interrogatory answers to

deny asbestos liability in its Consolidated Motion for Partial Summary Judgment

and/or to Dismiss Plaintiffs' Claims for Punitive Damages filed March 27, 2001 in

01-1-ACM-1.  In fact, in those moving papers CE stated:

> CE did not sell or manufacture any thermal insulation
> products containing asbestos used at any of the sites
> plaintiffs allege to have been exposed to asbestos-
> containing insulation.  CE's only involvement was to
> manufacture and sell boilers, without any insulation on
> any of the boiler parts.  CE shipped its boilers
> disassembled and other companies erected the boilers and
> applied the thermal insulation products after the boilers
> were assembled.

CE's Consolidated Motion to Strike Punitive Damages at p. 2, filed March 27,

2001.

11

34.    Indeed, in the Affidavit of CE counsel (*i.e.* an attorney in the firm of Defendant CHAR HAMILTON CAMPBELL & THOM) attached to CE's Consolidated Motion, it was stated:

>    3.    That based upon discovery conducted thus far, CE manufactured boilers and shipped its boilers in parts; and that the boiler parts were not insulated with any thermal insulation when it was shipped to its destination;
>
>    4.    That attached hereto as Exhibit "A", is a true and correct copy of relevant portions of defendant Combustion Engineering, Inc.'s Responses to plaintiffs' Amended Master Set of Interrogatories which demonstrate that CE did not know of the hazards of asbestos until 1969.

Affidavit dated March 26, 2001, attached to CE's Consolidated Motion for Partial Summary Judgment filed by Defendant CHAR HAMILTON CAMPBELL & THOM on March 27, 2001, in 01-1-ACM-1.

35.    On July 7, 1978, Frank T. Christenson, Assistant to the Vice-President of Marketing of CE Refractories, wrote a letter to CE's national counsel, Robert B. Preston of Arter & Hadden, confirming that: "The only asbestos-bearing products we produced which were accepted by the U.S. Navy are Stic-Tite Insulating Cement and Griptex Mineral Wool Block." John Brett was copied with this letter, thus proving he was aware of this conspiracy to lie about CE's asbestos sales in discovery answers. This letter was not discovered until October 2001. This letter again proves the falsity of CE Interrogatory Answers especially but not including

12

the Nobriga interrogatory No. 8 (answered July 16, 1979) (discussed in paragraph 17 above) whereby CE stated its "asbestos-containing insulation products were not on the U.S. Navy's Qualified Products List." Thus, Frank T. Christenson, on behalf of CE and with the aid, support and knowledge of Robert B. Preston, Arter & Hadden and Travelers Insurance Company, signed interrogatories denying CE asbestos products were on the U.S. Navy Qualified Products List, knowing that was a lie. This letter was "cc'd" to Donald Clark of Travelers Insurance Company.

36.    CE's attempt to deny that its manufacturing of boilers involved any asbestos is belied by depositions of CE workers at its St. Louis Division which manufactured marine and land-based boilers. *See for example*, the deposition of Raymond Burbach, who worked at the CE plant in St. Louis from February 9, 1949 to February 27, 1951, and then from 1954 to February 14, 1983. (*Id*. at p. 12.) After being laid off for approximately six months, in 1949 when he came back he was a helper in the sheetmetal shop. (*Id*. at p. 13.) Mr. Burbach saw that the people next to him in the other bay were working with asbestos-containing materials and "at the time they were working on Navy boilers." (*Id*. at p. 18.)

37.    CE's denial of direct sales of asbestos products to the U.S. Navy and its sales of "packaged boilers" to the U.S. Navy is additionally proven false by yet another Hornik memo (April 22, 1991) also on ABB letterhead to Dickhoff of CVCSC, with cc to Maryann Tower of Arter & Hadden. This is a self-

13

authenticating document discussing 132 CE package boilers sold to the U.S. Navy for construction of destroyer escorts. This exhibit shows how the following information was "input into database":

> 1.    "CE under the contract was responsible for . . . installation of insulation."
>
> 2.    "CE was responsible for placing assembled boilers on customer supplied barges and transporting them to shipyard."
>
> 3.    "86 of the CE supplied boilers were shipped from Houston partially assembled to Consolidated Steel's Shipbuilding Division in Orange, Texas . . . and 46 were shipped from Houston partially assembled to Brown Shipbuilding in Houston, Texas. Total number of boilers partially assembled by CE in vicinity of Houston--132."

38.    The April 22, 1991 Hornik memo discussed above references Contract No. 4543 for "the 132 boiler for 66 destroyer escorts supplied under Contract No. 4543." (first page.)  Contract No. 4543 included "Johns-Manville Co. insulating blocks, cement, etc." being ordered by CE under this contract "ship to U.S. Navy escort vessels."

39.    This is not the only direct documentary evidence of CE selling the U.S. Navy insulation.  A CE requisition is dated April 10, 1944, regarding U.S. Navy Contract Nos. 334 and 335.  It appears to relate to the same contract for "132 boilers (66 ships)."  (*Id.* at p. 1.)  This April 10, 1944 requisition quantifies the amount of "insulating blocks, cement, etc." as quantity of insulation material per

ship to service these marine boilers. (This reveals the original contract was for 158 boilers for 79 ships, reduced to 132 boilers for 66 ships.)

40.    A letter from R&I to CE-Superheater, Inc. is dated October 7, 1949, reflecting that CE (*i.e.* "Your Order 495675") was ordering for the "U.S. Navy" certain "insulating materials," including #1000 high temp cement, stic-tite, and insulation block.

41.    CE maintained an Asbestos Product List for Internal Use only which differed from its "external list." This highlights the fact that CE and its predecessors sold asbestos products from 1930 to the present, but publicly maintained it only sold asbestos products from 1963 to 1976. (*See*, Memorandum dated August 20, 1976, drafted by J.V. Murray.)

42.    CE shared knowledge of its two competing products lists (internal and external) with Arter & Hadden. (*See*, September 30, 1976 letter from Joseph Alex, Jr. of CE to Robert B. Preston of Arter & Hadden.)

43.    CE and its attorneys cooperated with its national counsel Arter & Hadden, its insurer Travelers Insurance Company and Frank T. Christenson to supply asbestos plaintiffs with incomplete asbestos product lists. (*See*, letter dated May 17, 1978 from Gretel S. Robinson to Joseph Alex of CE, with copies to Donald Clark of Travelers Insurance Company, Richard Dean of Arter & Hadden and Frank T. Christenson.)

44.    Arter & Hadden met with Travelers and discussed CE's asbestos sales for marine boilers the U.S. Navy used on U.S. Navy ships, including those at PHNSY, and with the ratification, cooperation and assistance of Travelers Insurance Company took responsibility for falsely answering the Hawaii Interrogatories denying asbestos sales to PHNSY and any Hawaii entity.

45.    The claims against Travelers are based upon conduct and information that is specific to its defense of Combustion Engineering and thus is non-Manville related conduct and information.  Travelers' Insurance relationship with Manville is not the factual predicate for any claim alleged herein.

46.    It is patently obvious that neither Frank T. Christenson nor CE's local Hawaii counsel, CHAR HAMILTON CAMPBELL & THOM, were the architects of a discovery scheme to provide nationwide evasive answers and hide the true extent of CE's asbestos nationwide distribution and supply, including that to the United States Navy, although they were the means by which this discovery fraud was perpetuated.

47.    Beginning after 1989, all acts in furtherance of this conspiracy that were performed by CVCSC personnel, including but not limited to John Hornik and Frank T. Christenson, were done while on the payroll of the ABB corporate family group.

16

48.     Travelers Insurance retained the law firm of Arter & Hadden to defend CE in the asbestos litigation. (Affidavit of William Askinazi at ¶ 3.) (As per the CE privilege log, this was at least as early as 1977. *Id.* at p. 67, no. 455.) Travelers was CE's insurance carrier and pursuant to the insurance contract between Travelers and CE, CE and Travelers agreed to cooperate in a joint defense of these asbestos cases. Travelers and CE shared an identical legal interest in defending these cases. Travelers was an integral and necessary part of the common defense and a necessary part of the rendition of legal services provided to defend CE. CE relied on Travelers as its representative to help control the asbestos litigation and coordinate the defense of these cases. (Affidavit of Askinazi at ¶ 4.)

49.     CE requested Arter & Hadden to prepare CE's local counsel handbook which has been Bates stamped in other litigation TRA030459-030814. (Affidavit of Roll at ¶ 3.) CE determined that in defending the pending and future asbestos cases it would "require a uniform method of management and communication between the corporation and its outside counsel. The local counsel handbook was the means of implementing CE's desired method of case management and communication with its attorneys." (Affidavit of Mirsky, p. 3.)

50.     The database that was referenced in the three Hornik 1993 memos is apparently the same "boiler database and the database for sales of asbestos-containing insulation products used by Connecticut Valley Claims Service Co.,

Inc., the company that handles CE's lawsuits and claims for asbestos related injuries and diseases, was developed by Arter & Hadden." (letter by CE's national counsel Steven J. Kirsch to Bruce Carter, dated November 2, 2000, at p. 3, re interrogatory no. 7.) Thus, (1) Travelers Insurance Co.'s handpicked counsel Arter & Hadden created the database, (2) evidence of CE asbestos purchase orders regarding Hawaii have been input into this database and yet (3) pertinent documents have not been produced and are claimed to have been lost even though the 1993 memorandum states that the purchase orders (presumably originals) were given to Frank T. Christenson.  It is note-worthy that Maryann Tower was a recipient of the factual based 3 Hornik 1993 memos (at first page of each) and she is a paralegal at Arter & Hadden.

51.    Travelers in the early 1980's attempted to be very aggressive with plaintiffs' counsel.  Travelers felt there was an opportunity to meet with plaintiffs' counsel and say, "Combustion Engineering is a very peripheral player in this. They didn't get involved until 1963.  It's a limited window.  If you're agreeable to basically nuisance value, we will pay you on cases if it meets a certain criteria," and Travelers would attempt to establish the specific criteria with that particular firm.  If it was jobsite specific, they would send in information, Travelers would review that information, review the documents, the records of Combustion Engineering to make a liability analysis was Combustion at this site, and if so, to

what extent, and then they would attempt to put dollar amounts by disease category and they were successful in doing that and that approach continued at CVCSC. (*See* deposition of John Dickhoff taken December 17, 1998.)

52.   In the 1980's when Plaintiffs' attorney Gary O. Galiher was first negotiating the initial global settlement with CE's local attorney, Peter C. P. Char, who was the senior partner of Defendant CHAR HAMILTON CAMPBELL & THOM, Mr. Char specifically told Mr. Galiher that CE only sold boilers with bare steel on them to Hawaii and to the United States Navy, and insulation was not supplied by CE and was supplied by others.

53.   Peter C. P. Char, as senior attorney at Defendant CHAR HAMILTON CAMPBELL & THOM, negligently made these representations and negligently allowed his standing as an officer of the court and well-respected member of the Hawaii bar to aid and abet the mis-information in the interrogatory answers of CE to be communicated to Plaintiffs.

54.   It was the goal of Travelers and Travelers hand-picked national counsel, Arter & Hadden to use this mis-information to achieve depressed settlements in the asbestos litigation for mass settlement agreements of existing cases and administrative settlement procedures be agreed to for resolving future cases in Hawaii.

55.    As a result of the aforesaid, Defendants and each of them joined a conspiracy to present false discovery answers in the Hawaii asbestos litigation, falsely deny that CE sold asbestos containing products to Hawaii entities, to Pearl Harbor Naval Shipyard (PHNSY) in particular and to the U.S. Navy for use on CE boilers on U.S. Navy ships that were stationed at and repaired at PHNSY and thus falsely deny that Hawaii residents and PHNSY employees were exposed to asbestos products sold by CE and for which CE was in the chain of distribution. All of which injured Plaintiffs by inducing them to enter into personal injury and/or wrongful death settlements for asbestos disease at values lower than what they would have settled for if they had not been lied to.

FIRST CAUSE OF ACTION:

Plaintiffs are entitled to damages for depressed settlement values, (*i.e.,* the difference between what they would have settled for had they not been deceived by the fraudulent discovery answers of CE and what they did settle for) against all Defendants since all Defendants joined this conspiracy and are liable for the actions of their co-conspirator even if performed before they joined this conspiracy.

SECOND CAUSE OF ACTION:

Asea Brown Boveri, Inc., Asea Brown Boveri, Ltd. and ABB, Ltd. are liable for this fraud since they ratified the ongoing conspiracy to perpetuate this fraud after 1989.

THIRD CAUSE OF ACTION:

Asea Brown Boveri, Inc., Asea Brown Boveri, Ltd. and ABB, Ltd. are liable for this fraud since this fraud was perpetuated and continued by Connecticut Valley employees who were on the payroll of the ABB corporate family group from 1989 onwards and thus were acting as agents and employers of the ABB corporate family group.

FOURTH CAUSE OF ACTION:

Defendant CHAR HAMILTON CAMPBELL & THOM is liable for this fraud since attorneys at CHAR HAMILTON CAMPBELL & THOM negligently failed to ascertain the falsity of CE's interrogatory answers in the Hawaii asbestos litigation and allowed CE and the other conspirator Defendants to use the prestige of the CHAR HAMILTON CAMPBELL & THOM firm and the fact its senior partner Peter Char was, prior to his death, a well-respected member of the Hawaii bar to promote the false answers of CE to induce deflated settlements.

## FIFTH CAUSE OF ACTION:

Travelers Indemnity Company and Travelers Insurance Company and Arter & Hadden are liable to Plaintiffs for fraud and conspiracy to commit fraud for creating, implementing and fostering this scheme to falsely answers to interrogatories in Hawaii and throughout the mainland to deny asbestos sales to Hawaii to induce low settlement agreements.

## SIXTH CAUSE OF ACTION:

The fraudulent activities of CVCSC, Frank Christenson and CE were performed as agents of the ABB corporate family and Asea Brown Boveri, Inc., Asea Brown Boveri, Ltd. and ABB, Ltd. to protect the equity and financial viability of the ABB corporate family group after 1989.

## SEVENTH CAUSE OF ACTION:

The ABB Group and Asea Brown Boveri, Inc., Asea Brown Boveri, Ltd., and ABB, Ltd. have been unjustly enriched by this discovery fraud in Hawaii.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount of damages that is within the minimum jurisdictional limits of this Court, as follows:

1.    General damages as are proven at the time of trial;

2.    Special damages as are proven at the time of trial;

22

3.    Punitive damages as are proven at the time of trial;

4.    For costs incurred herein;

5.    For equitable relief against Defendants; and

6.    For such other and further relief as may be deemed just and equitable in the premises, including, but not limited to, prejudgment interest.


DATED:  Honolulu, Hawaii, __July 7, 2003_____

GARY O. GALIHER
L. RICHARD DeROBERTIS
DEREK S. NAKAMURA
JEFFREY T. ONO
ANTHONY P. TAKITANI
DIANE T. ONO
**Attorneys for Plaintiffs**

23

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br>HAWAII STATE ASBESTOS<br>CASES | CIVIL NO. CV 03-00326 REJ KSC<br><br>**SUMMONS** |

IN RE:
HAWAII STATE ASBESTOS
CASES                                    )    CIVIL NO. CV 03-00326 REJ KSC
                                         )
                                         )    **SUMMONS**
                                         )
GEORGE H. TORO and VIVIAN                )
TORO;                                    )
                                         )
ZEKE H. SAKURAI and MASAE                )
SAKURAI;                                 )
                                         )
LOLITA F. APO, individually and as       )
Special Administrator of the Estate of   )
JOHN K. APO, deceased;                   )
                                         )
VIOLET MAII, individually and as         )
Special Administrator of the Estate of   )
SAMUEL K. MAII, deceased;                )
                                         )
            Plaintiffs,                   )
                                         )
      vs.                                )
                                         )
1) COMBUSTION ENGINEERING,               )
INC., a Delaware corporation;            )
                                         )
2) ABB, LTD., a foreign corporation,     )
as Successor-in-Interest to              )
COMBUSTION ENGINEERING,                  )
INC., a Delaware corporation;            )
                                         )
3) ASEA BROWN BOVERI, LTD.,              )
a foreign corporation, as Successor-     )
in-Interest to COMBUSTION                )
ENGINEERING, INC., a Delaware            )
corporation;                             )

4) ASEA BROWN BOVERI, INC., a )
Delaware corporation, as Successor- )
in-Interest to COMBUSTION )
ENGINEERING, INC., a Delaware )
corporation; )
)
)
5) TRAVELERS INSURANCE )
COMPANY, a Connecticut )
corporation; )
)
6) TRAVELERS INDEMNITY )
COMPANY, a Connecticut )
corporation; )
)
7) ARTER & HADDEN, LLP; )
)
8) ROBERT B. PRESTON, an )
individual; )
)
9) FRANK CHRISTENSON, an )
individual; )
)
10) CONNECTICUT VALLEY )
CLAIMS SERVICES COMPANY, )
INC. a Delaware corporation; )
)
11) JOHN P. BRETT, an individual; )
)
12) CHAR HAMILTON )
CAMPBELL & THOM, Attorneys At )
Law, A Law Corporation; )
)
Defendants. )
)

D:\00862A70\pleading\jts009fac.doc

2

# SUMMONS

STATE OF HAWAII

To the above-named Defendants:

You are hereby summoned and required to serve upon GALIHER DeROBERTIS NAKAMURA ONO TAKITANI, Plaintiffs' attorneys, whose address is 610 Ward Avenue, Suite 200, Honolulu, Hawaii 96814-3308, an answer to the First Amended Complaint which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the First Amended Complaint.

DATED:  Honolulu, Hawaii, _____JUL 0 7 2003_____.


_____
CLERK OF THE ABOVE-ENTITLED COURT

LORI OKENKA
_____
DEPUTY CLERK

3